**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monica Morris, | No. CV-21-01511-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff seeks judicial review of the Social Security Administration ("SSA") Commissioner's decision denying her application for SSA disability benefits. Plaintiff filed her Opening Brief (Doc. 15). Defendant filed a Response Brief (Doc. 16), and Plaintiff filed her Reply Brief (Doc. 17). The Court has reviewed the briefs and the Administrative Record (Doc. 14-3, "R."). For the following reasons, the Court affirms the Administrative Law Judge's ("ALJ") decision.

## I.   Background

On November 28, 2017, Plaintiff protectively filed an application for a period of disability and disability benefits with an alleged onset date of October 13, 2017. (R. at 21). An ALJ issued an unfavorable decision on January 6, 2021. (*Id.* at 34). The Appeals Council denied Plaintiff's request for review. (*Id.* at 9). This appeal followed.

Plaintiff claims several impairments to her ability to work. (*Id.* at 23). The ALJ found Plaintiff had the following severe impairments: seizure disorder, Meniere's disease, obesity, peripheral neuropathy, vertigo, peripheral vascular disease, neurocognitive

disorder and unspecified depressive disorder with anxious distress.  (*Id.*)  The ALJ found Plaintiff had the following non-severe impairments: hypertension, hyperlipidemia, diabetes, hypothyroidism, vitamin B deficiency, vitamin D deficiency, magnesium deficiency and mild obstructive sleep apnea, and hearing loss related to her Meniere's disease.  (*Id.* at 24).

During her symptom testimony Plaintiff represented that she is unable to work due to seizures, dizziness, and Meniere's disease.  (*Id.* at 27).  She testified that she has temporary loss of hearing that can occur four times during a week and can last throughout an entire day.  (*Id.*)  Plaintiff also has difficulty with postural maneuvers. (*Id.*)

The ALJ, citing to medical records, found Plaintiff's symptom testimony was "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (*Id.* at 28).  The ALJ concluded that Plaintiff had the residual functional capacity to perform

> light work . . . except the claimant can occasionally lift and or carry up to 20 pounds and frequently up to 10 pounds, stand and or walk for about six hours total and sit for about six hours total. She can frequently climb ramps or stairs, but never ladders, ropes or scaffolds. She can occasionally balance and frequently stoop, kneel, crouch or crawl. She retains the ability to work in an environment where her exposure to hazards like moving dangerous machinery and unprotected heights does not exceed frequently. Due to her mental health, medication side effects and other symptoms and limitations she retains the ability to understand, remember and apply information as well as maintain her concentration, persistence or pace regarding simple three to four step instructions, follow work like procedures, make simple work related decisions and she retains the ability to adjust to occasional work related changes in the described environment.

(*Id.* at 27).

The ALJ thus found "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.* at 33).  The ALJ therefore determined Plaintiff was not disabled.  (*Id.* at 34).

Plaintiff raises three issues on appeal: (1) whether the ALJ properly considered Plaintiff's age category in finding she could perform other work; (2) whether the ALJ failed to incorporate Plaintiff's mental and physical limitations in her RFC determination; (3)

1  whether the ALJ's decision was constitutionally defective because it violated the separation

2  of powers.  (Doc. 15 at 1–2).

3  **II.    Standard of Review**

4          In determining whether to reverse an ALJ's decision, the district court reviews only

5  those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503,

6  517 n.13 (9th Cir. 2001).   The Court may set aside the Commissioner's disability

7  determination only if it is not supported by substantial evidence or is based on legal error.

8  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence

9  that a reasonable person might accept as adequate to support a conclusion considering the

10  record as a whole.  *Id.*  To determine whether substantial evidence supports a decision, the

11  Court must consider the record as a whole and may not affirm simply by isolating a

12  "specific quantum of supporting evidence."  *Id.*  Generally, "[w]here the evidence is

13  susceptible to more than one rational interpretation, one of which supports the ALJ's

14  decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954

15  (9th Cir. 2002) (citations omitted).

16          To determine whether a claimant is disabled for purposes of the Act, the ALJ

17  follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of

18  proof on the first four steps, but the burden shifts to the Commissioner at step five.

19  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the ALJ determines whether

20  the claimant is presently engaging in substantial gainful activity.   20 C.F.R. §

21  404.1520(a)(4)(i).   Second, the ALJ determines whether the claimant has a "severe"

22  medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).

23  Third, the ALJ considers whether the claimant's impairment or combination of

24  impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

25  of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically

26  found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's residual functional

27  capacity and determines whether the claimant is still capable of performing past relevant

28  work. 20 C.F.R. § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step,

where he determines whether the claimant can perform any other work in the national economy based on the claimant's residual functional capacity, age, education, and work experience.   20 C.F.R. § 404.1520(a)(4)(v).   If the ALJ determines no such work is available, the claimant is disabled.  *Id.*

**III.   Discussion**

The Court finds the ALJ properly considered Plaintiff's age category and that she could perform other work.  The Court also finds the ALJ properly accounted for Plaintiff's mental and physical impairments in her RFC finding.  Finally, the Court finds the ALJ's final decision was not constitutionally defective.

**A.  Plaintiff's Age Category**

Plaintiff argues the ALJ erred in her "mechanical" application of the age category. (Doc. 15 at 12).  She contends the Program Operations Manual System ("POMS") and the Hearings, Appeals, and Litigation Manual ("HALLEX") required the ALJ to conduct the "borderline age analysis."  (*Id.* at 13).  Plaintiff argues that the ALJ would have been required to conclude Plaintiff was disabled if the ALJ had treated Plaintiff as a person of advanced age.  (*Id.*)

Social security regulations divide plaintiffs into three age categories: younger persons (those persons under age 50), persons closely approaching advanced age (those persons age 50–54), and persons of advanced age (those persons age 55 or older).  20 C.F.R. § 404.1563(c)–(e). Where a plaintiff is within a few days or a few months of reaching an older age category (a "borderline situation"), an ALJ has discretion, but is not required, to use the older age category.  *Id.* § 404.1563(b); *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1069 (9th Cir. 2010).  "Although an ALJ is required by regulation to *consider* whether to use an older age category in a borderline situation, there is no requirement that the ALJ explain in her written decision why she did not use an older age category."  *Id.*  at 1070 (emphasis in original).

As an initial matter, the Ninth Circuit has found POMS and HALLEX constitute agency interpretations, which are "entitled to respect" and have "the power to persuade,"

but do not "impose judicially enforceable duties on either this court or the ALJ." *Id.* at 1072–73.  In any event, the Court finds the ALJ properly considered whether to use the older age category.

Here, the ALJ issued her decision on January 6, 2021.  (R. at 34).  Plaintiff, born on July 6, 1966, was six months shy of her 55th birthday.  (*Id.* at 31).  In her decision, the ALJ notes Plaintiff "was born on July 6, 1966 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563)."  In *Lockwood*, the court found the ALJ's citation to 20 C.F.R. § 404.1563, which prohibited the ALJ from applying the age categories mechanically in a borderline situation, was sufficient to show the ALJ "knew she had discretion 'to use the older age category after evaluating the overall impact of all the factors of [Lockwood's] case.'" *Lockwood*, 616 F.3d at 1069; 20 C.F.R. § 404.1563(b).  The court further found the ALJ did not apply the age categories mechanically because the ALJ evaluated the impact of "all the factors" when the ALJ relied on the vocational expert's testimony before she found plaintiff was not disabled.  *Id.*

Likewise, the ALJ here noted Plaintiff's date of birth, found Plaintiff was a person closely approaching advanced age, and cited to the relevant regulation.  (R. at 32).  The ALJ also considered the vocational expert's testimony before she found Plaintiff was not disabled.  Specifically, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with the Plaintiff's "age, education, work experience, and residual functional capacity."  (*Id.* at 33).  The vocational expert testified that, "given all of these factors," the individual would be able to perform work as an assembler, general inspector, or office helper.  (*Id.*)  The Court therefore finds the ALJ properly considered whether to use the older age category and did not err when she did not explain the reasons she used Plaintiff's chronological age—instead of treating Plaintiff as a person of advanced age.  *See Lockwood*, 616 F.3d at 1069 (holding "the ALJ did not err because she was required by regulation only to *consider* whether to use the older age category.") (emphasis added).

**B. RFC Determination**

Plaintiff challenges the ALJ's RFC findings, arguing the ALJ did not take account of all her limitations in fashioning the RFC. Specifically, Plaintiff argues the ALJ failed to include any mental or physical limitations in her RFC determination. (Doc. 15 at 8–12).

The ALJ concluded that Plaintiff "has the residual functional capacity to perform light work . . . ." Specifically, the RFC reads:

> [Plaintiff] can occasionally lift and or carry up to 20 pounds and frequently up to 10 pounds, stand and or walk for about six hours total and sit for about six hours total. She can frequently climb ramps or stairs, but never ladders, ropes or scaffolds. She can occasionally balance and frequently stoop, kneel, crouch or crawl. She retains the ability to work in an environment where her exposure to hazards like moving dangerous machinery and unprotected heights does not exceed frequently. Due to her mental health, medication side effects and other symptoms and limitations she retains the ability to understand, remember and apply information as well as maintain her concentration, persistence or pace regarding simple three to four step instructions, follow work like procedures, make simple work related decisions and she retains the ability to adjust to occasional work related changes in the described environment.

(R. at 27).

The Court finds the ALJ did not ignore Plaintiff's mental and physical limitations when she fashioned Plaintiff's RFC. At the outset, the Court notes the ALJ's RFC explicitly mentions her mental health and medication side effects. Plaintiff argues the ALJ's RFC finding does not reflect the moderate mental limitations she experienced and, whether severe or not, "remand is required for further consideration of [Plaintiff's] mental impairments and their impact on her ability work." (Doc. 15 at 8). But the medical record supports the ALJ's conclusion that Plaintiff's mental impairments were moderate and that she "retain[ed] the ability to understand, remember and apply information." (R. at 27). The ALJ notes Plaintiff "did not demonstrate any cognitive deficits during visits with her medical providers," and "was able to understand and answer questions adequately during her hearing." (*Id.* at 26). Plaintiff also "frequently demonstrated an appropriate mood and affect during visits with her medical providers," and had no issues with them. (*Id.*) The ALJ noted Plaintiff participated "in family activities and goes to social events with friends"

such as "baseball games and movies and having her friends visit her at home" and went on "weeklong overseas trip with friends." (*Id.*)

After the ALJ's extensive discussion of Plaintiff's mental limitations, she stated "[t]he following residual functional capacity assessment reflects the *degree of limitation* the undersigned has found in the "paragraph B" mental function analysis." (*Id.* at 27) (emphasis added). The Court therefore finds the ALJ's conclusion that Plaintiff "retains the ability to understand, remember and apply information as well as maintain her concentration, persistence or pace regarding simple three to four step instructions" represents a reasonable finding grounded in the administrative record.

Plaintiff further argues the RFC finding contains no limitations of Plaintiff's Meniere's disease and vertigo and that the ALJ's limitation to occasional walking and standing is not consistent with light work as defined by agency rules and regulations. (Doc. 15 at 10).    But the ALJ did consider her physical limitations and noted "significant improvement after treatment for Meniere's disease." (R. at 31).   The ALJ noted Plaintiff's severity was inconsistent with her activity level, including her completion of "household tasks and chores and participating in family activities and going to events and trips with friends, along with the lack of any significant neurological deficits on examination." (*Id.*) In addition, the ALJ's RFC adds postural and environmental limitations for her safety and to guard against any exacerbations.   The Court therefore finds the ALJ's conclusion that Plaintiff "can occasionally balance and frequently stoop, kneel, crouch or crawl" represents a reasonable finding. Accordingly, the Court finds the ALJ adequately accounted for Plaintiff's mental and physical limitations in his construction of her RFC.

**C. Unconstitutional Removal Protections—Separation of Powers**

Last, Plaintiff argues that the ALJ's decision is constitutionally defective because of the allegedly unconstitutional statutory removal restriction contained in 42 U.S.C. § 902(a)(3), which limits the President's authority to remove the Commissioner of Social Security without cause. (Doc. 15 at 16–19).

The Supreme Court has held restrictions on Presidential removal powers of an

agency director violate the separation of powers and render an agency's structure unconstitutional. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (June 20, 2020); *Collins v. Yellen*, 141 S. Ct. 1761, 1789–87 (2021). Where an unconstitutional statutory removal restriction exists, however, plaintiff must show "compensable harm" to seek relief under that basis. *See Collins*, 141 S. Ct. at 1789–87. In other words, plaintiff must show that her harm—her unfavorable decision—was tied to the unconstitutional removal provision. *Id.*

Plaintiff grounds her constitutional challenge only on the relevant removal restriction, not on a nexus between the unconstitutional removal restriction and the denial of her application for disability benefits. Plaintiff argues that all actions taken by the Commissioner, and his appointed ALJ's, including her unfavorable decision, are void because those actions stemmed from the Commissioner's unauthorized delegation of authority. (Doc. 15 at 17). But *Collins* rejected this view, noting "the unlawfulness of the removal provision does not strip [agency directors] of the power to undertake the other responsibilities of their office." *Collins*, 141 S. Ct. 1761 at 1788, n. 23 (internal citation omitted). The Court further stated "there is no reason to regard any of the actions taken" by the agency during this period "as void." *Id.* Plaintiff makes no connection between the ALJ denying her claim and § 902(a)(3). Broadly arguing that "the regulations and policies promulgated by Mr. Saul" are constitutionally defective, without more, is insufficient to show a compensable harm. (Doc. 15 at 17); *see Nudelman v. Comm'r of Soc. Sec. Admin.*, 2022 WL 101213, at *13 (D. Ariz. Jan. 11, 2022) (finding "[a] broadly construed but-for causal chain [between plaintiff's denial of benefits and § 902(a)(3)] is insufficient."). The Court therefore finds Plaintiff has not stated a compensable harm and the ALJ's final decision is not constitutionally defective.

**IV.    Conclusion**

The Court finds the ALJ properly considered Plaintiff's age category and that she could perform other work. The Court further finds the ALJ properly accounted for Plaintiff's mental and physical impairments in her RFC finding. Finally, the Court finds the ALJ's final decision was not constitutionally defective. Therefore, the Court finds that

the ALJ did not err in her decision, which is based on substantial evidence.  *See Orn*, 495 F.3d at 630.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk of Court is directed to enter judgment accordingly and terminate this action.

Dated this 12th day of September, 2022.

_____
Honorable Diane J. Humetewa
United States District Judge